IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

HUNTER PARRISH, et al.,

     Plaintiffs,

v.           CIVIL ACTION NO.   5:12-cv-03759

AUTO DETAILING BY ME, LLC, et al.,

     Defendants.

MEMORANDUM OPINION AND ORDER

The Court has reviewed the *Amended Complaint* (Document 86), *Defendant Sgt. John Dunn's Motion for Summary Judgment* (Document 122), *Defendant Det. Gary Epling's Motion for Summary Judgment* (Document 123), their respective *Memoranda in Support* (Documents 124 & 125), *Plaintiff Hunter Parrish's Consolidated Response in Opposition to Detective Gary D. Epling and Sgt. John Dunn's Motions for Summary Judgment* (Document 129), and *Defendant Sgt. John Dunn and Detective Gary Epling's Combined Reply to the Plaintiff's Response to the Motion for Summary Judgment* (Document 131).   The Court has further reviewed the attached exhibits.

For the reasons stated herein, the Court finds that the motions for summary judgment should be granted in part and denied in part.

**I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

This action was initiated with a *Complaint* (Document 1) filed on July 26, 2012.   The complaint listed Hunter Parrish, Kyle King, and Florence McCallister, as Parent and Next Friend

of her minor child, Ricky McCallister, as Plaintiffs.  It listed Auto Detailing by Me, LLC., Matthew D. Epling, Detective Gary D. Epling, and Sgt. John Dunn as Defendants.  On March 29, 2013, the Plaintiffs sought leave of the Court to file an amended complaint substituting Ricki McCallister, who had become eighteen, as Plaintiff in place of her mother, clarifying certain allegations, and removing a "negligence" count in response to information developed during discovery.  The Court granted leave to amend, and the *Amended Complaint* (Document 86) was filed on April 26, 2013.  Plaintiff Kyle King stipulated to voluntary dismissal of his claims against all Defendants.  (*See* Document 99.)  Mediation was conducted on Thursday, November 21, 2013 (*See* Document 101), and the Court received notice that all claims of Plaintiff Ricki McAllister were settled against all Defendants, and that the claims of Hunter Parrish were settled against Defendants Auto Detailing by Me, LLC, and Matthew Epling.  (*See* Document 130). Thus, only Plaintiff Hunter Parrish's claims against Defendants Detective Gary D. Epling and Sergeant John Dunn remain pending.

This case arose out of an incident which took place in late July 2011, in Beckley, Raleigh County, West Virginia.  Ricki McCallister, then aged sixteen, worked at Auto Detailing by Me through the Workforce Investment Board's TANF (Temporary Assistance to Needy Families) Summer Youth Program (hereinafter, "Workforce").[1]  (Am. Compl. ¶¶ 11–12.)  Matt Epling is the Managing Member of Auto Detailing by Me.  (Am. Compl. ¶ 5.)  A dispute arose between Ms. McCallister and Auto Detailing by Me, and her employment was terminated, though the parties have provided slightly different accounts of the incident.  Ms. McCallister's mother was unable to pick her up and, instead, asked Hunter Parrish, Ricki McCallister's boyfriend, to do so.

---

[1] The TANF Summer Youth Program is a state-funded program through which local businesses can hire participants, who are paid by the Workforce program.  Participants work under the supervision and control of the participating businesses, with certain guidelines set forth by Workforce.

There is some dispute between the parties as to when and how Auto Detailing by Me and Matt Epling were informed that Florence McCallister had provided permission for her daughter to leave with her boyfriend.   However, the Plaintiff contends that Workforce called to give permission before Parrish arrived, and has produced evidence suggesting that Ricki McCallister attempted to convey her mother's approval prior to Parrish's arrival.   (Resp. at 5.)   Matt Epling was aware that McCallister had contacted her boyfriend to pick her up.   Apparently, not wanting her to leave in violation of Workforce rules and concerned about a potential disturbance or altercation, Matt Epling called his brother, Gary Epling.   (Pl.'s Ex. 2, M. Epling Depo., 78–80.)   Gary Epling is a detective with the Raleigh County Sheriff's Department.

Gary Epling and his partner and supervisor, Sergeant John Dunn, both undercover narcotics officers in plain clothes and on their way to lunch, went to Auto Detailing by Me in response to Matt Epling's call, motivated in part by Matt Epling's concerns about potential civil liability.   (Resp. at 4.)   Detective Epling states that he did not call in to dispatch that they were responding to the call.   (Pl.'s Ex. 7, G. Epling Depo., 44.)   Sergeant Dunn's deposition testimony appears to indicate that he did not know the reason for the call or the visit to Matt Epling's business until after the incident had concluded, either on the way back to the office or while completing paperwork.   (Pl.'s Ex. 12, Dunn Depo., 60–61.)   His interrogatory responses, however, indicate that he did know they were responding to a call from Detective Epling's brother "to assist in a possible problem with a Workforce employee."   (Pl.'s Ex. 6, Def. Dunn's Answers to Interrog.s, Interrog. 2.)   McCallister stated that after the officers had arrived, she was on the phone with her mother, who agreed that she could leave and be picked up by Parrish, but Matt Epling refused to speak with her.   (Pl.'s Ex. 1, McCallister Depo., 40–41.)

3

According to the Plaintiff, he arrived to see "Ricki on the sidewalk crying surrounded by several men he did not recognize."  (Resp. at 5.)  Two friends accompanied Parrish: Kyle King and King's younger brother, who remained in the vehicle.  The parties dispute whether Detective Epling's badge was visible. The Plaintiff asserts that Detective Epling and Sergeant Dunn failed to identify themselves as officers in any manner.  Detective Epling ordered Parrish and King to leave the area.  Parrish and his friends drove down the street, parked, and walked back to scene. Detective Epling again ordered them to leave.  Still unaware that Detective Epling was a police officer,[2] Parrish instead walked back to where McCallister was standing.  The precise details of the physical confrontation are disputed. The evidence at this stage, however, is viewed in the light most favorable to the non-moving party.  Detective Epling "grabbed Parrish by the elbow," and Parrish attempted to pull away.  (*Id.* at 6–7.)  Detective Epling states: "I threw him up against [the garage door], he was shocked, and then I threw him down on the ground."  (G. Epling Depo., 102.)  The garage door had a plate glass window with a sheet metal sign, and the glass broke when Detective Epling slung Parrish against the door.  (*Id.* at 108.)  Parrish states that he briefly lost consciousness as a result of his head hitting the garage door.  McCallister reports seeing "blood all over [Parrish's hand]" while he was still on the ground.  (McCallister Depo., 52–53.) Detective Epling planned to handcuff and arrest Parrish, apparently for refusing to obey his orders and for assaulting an officer, and pinned him, perhaps still unconscious,[3] on the ground.  (G. Epling Depo., 93–94, 104–106.)  King then attempted to pull Detective Epling off of Parrish, and

---

2  The Defendants contend that their badges were visible and that the Plaintiff was or should have been aware that they were officers.  However, evidence and inferences are viewed in the light most favorable to the Plaintiff at the summary judgment stage.

3  Parrish reports that he "remember[s] waking up on the ground as he was pulled off of me."  (Pl.'s Ex. 8, Parrish Depo., 29.)

Detective Epling shoved him into the door as well.   Parrish suffered a severe cut to his hand that required surgical reattachment of the sagittal band.

Sergeant Dunn, meanwhile, observed Detective Epling's initial orders to the Plaintiff, and the ensuing physical confrontation, and intervened only after King joined the tussle.[4]   It is unclear whether he intervened with the intention of assisting Detective Epling in apprehending Parrish and King or with the intention of stopping Detective Epling from further assaulting them. His interference ended the altercation.[5]   Sergeant Dunn called 911 to report Parrish's injuries, but Parrish, King, and McCallister left.   Criminal charges were eventually filed against Parrish and King.[6]   King's charges were apparently dismissed as part of the settlement of his claims in this matter, and Parrish successfully completed pretrial diversion.[7]

As a result of the incident described above, the Plaintiff has asserted six counts against the Defendants: Count One pursuant to 42 U.S.C. § 1983, for acting under color of state law to violate federal rights; Count Two for Assault and Battery;[8] Count Three for False Imprisonment; Count Four for Outrageous Conduct; Count Five for Vicarious Liability (against Matt Epling and Auto Detailing by Me)[9]; and Count VI for Damages.   The Defendants assert that they are entitled to

---

4 There is factual dispute regarding how close Sgt. Dunn was when the altercation began and when he could reasonably have intervened.
5 Det. Epling reports that Dunn "grabbed the back of me and said, Gary, go down there and calm down."   (Epling Depo., 109.)
6 Sergeant Dunn's police report describing the incident is apparently unavailable.   The Plaintiff suggests that it was once part of the Raleigh County Sheriff's Office Incident Report but was lost or destroyed, and an adverse inference instruction may be called for.   (Resp. at 10.)   The Court makes no ruling at this time on the evidentiary issue, but will, of course, consider the Plaintiff's factual account and allegations in evaluating the present motions for summary judgment.
7 As the Plaintiff has pointed out, pretrial diversion does not involve an adjudication of guilt; charges are dismissed after a period of time if a defendant successfully completes a period of supervision.
8 The Plaintiff indicated in his response that he does not oppose Sgt. Dunn's motion for summary judgment with respect to assault and battery.   (Resp. at p. 11, note 12.)
9 Count Five was an attempt to hold Matt Epling and Auto Detailing by Me liable for the injuries and damages caused by the officers.   The Plaintiff has settled his claims against Matt Epling and Auto Detailing by Me, and the Court will not consider Count Five.

qualified immunity and that they are entitled to immunity as to all state law claims under W.Va. Code § 29-12A-5(b).   Detective Epling claims that he used objectively reasonable force and that there are no facts supporting the false imprisonment claim or the outrage claim.   Sgt. Dunn claims that no facts support the claims of false imprisonment, outrage, or assault and battery filed against him, and that no evidence supports a theory of bystander liability.

## II.   STANDARD OF REVIEW

The well-established standard in consideration of a motion for summary judgment is that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a)–(c); *see also Hunt v. Cromartie*, 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986); *Hoschar v. Appalachian Power Co.*, 739 F.3d 163, 169 (4th Cir. 2014).   A "material fact" is a fact that could affect the outcome of the case. *Anderson*, 477 U.S. at 248; *News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010).   A "genuine issue" concerning a material fact exists when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor.  *FDIC v. Cashion*, 720 F.3d 169, 180 (4th Cir. 2013); *News & Observer*, 597 F.3d at 576.

The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp.*, 477 U.S. at 322–23.   When determining whether summary judgment is appropriate, a court must view all of the factual evidence, and any reasonable inferences to be drawn therefrom, in the light most favorable to the nonmoving party. *Hoschar*, 739 F.3d at 169.    However, the non-moving party

must offer some "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. "At the summary judgment stage, the non-moving party must come forward with more than 'mere speculation or the building of one inference upon another' to resist dismissal of the action." *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter," *Anderson*, 477 U.S. at 249, nor will it make determinations of credibility. *N. Am. Precast, Inc. v. Gen. Cas. Co. of Wis.*, 2008 WL 906334, *3 (S.D.W. Va. Mar. 31, 2008) (Copenhaver, J.) (citing *Sosebee v. Murphy,* 797 F.2d 179, 182 (4th Cir.1986). If disputes over a material fact exist that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," summary judgment is inappropriate. *Anderson*, 477 U.S. at 250. If, however, the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case," then summary judgment should be granted because "a complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23.

## III. DISCUSSION

The Defendants argue that they are not subject to liability based on qualified immunity (for federal claims) and W.Va. Code 29-12A-5(b) (for state claims). Failing that, they assert that the Plaintiff has failed to demonstrate any unreasonable or unlawful conduct, and thus, they are entitled to judgment as a matter of law on all claims. The Plaintiff responds that the officers intervened in a purely civil employment matter with no evidence of criminal activity, failed to identify themselves as officers, and Detective Epling instigated a mismatched physical altercation

7

with Parrish while Sergeant Dunn observed, intervening only after Parrish had been thrown against a garage door and pinned to the ground.   Even at that point, it is not clear whether Dunn intervened to assist Epling or to stop Epling from further action against Parrish.   The officers later pursued criminal charges against Parrish for battery on a police officer, obstructing an officer, disorderly conduct, and destruction of property.   The Plaintiff contends that the officers lacked probable cause for such charges.   The Defendants reply that the officers were present to keep the peace and acted within the scope of their employment.   They provided portions of an expert report stating that officers may properly respond to calls from family members and suggesting that Detective Epling's use of force was reasonable self-defense in response to Parrish pushing him away after he touched Parrish on the arm.   The Defendants further argue that the criminal charges were supported by probable cause, as found by a magistrate judge, and that Parrish "was never found innocent of the charges."[10]

### A.  Qualified Immunity

Qualified immunity is an affirmative defense intended to shield public officials from civil suits arising out of their performance of job-related duties.   *See, e.g., Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009).   Defendants asserting a qualified immunity defense first bear the burden of "demonstrating that the conduct of which the plaintiff complains falls within the scope of the defendant's duties."   *In re Allen*, 106 F.3d 582, 594 (4th Cir. 1997) (internal quotation marks omitted.)   The defense of qualified immunity is available unless the official "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff…."   *Harlow v. Fitzgerald*, 457 U.S. 800,

---

10  The Court notes that criminal defendants have no obligation to prove their innocence.   Mr. Parrish's charges were disposed of via pre-trial diversion, which does not involve an adjudication of guilt, and he remains entitled to a presumption of innocence.

815 (1982) (internal emphases omitted).  Officials are protected even if they make reasonable mistakes of fact or law, so long as they do not violate a clearly established statutory or constitutional right.  *Pearson*, 555 U.S. at 231–32.  "A constitutional right is 'clearly established' when its contours are sufficiently clear that a reasonable official would understand that what he is doing violates that right."  *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013) (internal quotation marks and citations omitted).

Courts are advised to "ask first whether a constitutional violation occurred and second whether the right violated was clearly established."  *Id.*  The reasonableness analysis is objective: courts must "examine[] only the actions at issue and measure[] them against what a reasonable police officer would do under the circumstances," but the inquiry "must be filtered through the lens of the officer's perceptions at the time of the incident."  *Rowland v. Perry*, 41 F.3d 167, 172-73 (4th Cir. 1994).  "[T]he officer's subjective state of mind is not relevant to the qualified immunity inquiry but his perceptions of the objective facts of the incident in question are."  *Id.* at 173.  However, the ordinary summary judgment standard remains in effect.  The Fourth Circuit explained:

> Here, as in any context, summary judgment for the movant is appropriate only if (1) there are no genuine issues of material fact, and (2) on the undisputed facts the defendant as movant is entitled to judgment as a matter of law. As indicated, the narrow threshold question whether a right allegedly violated was clearly established at the appropriate level of inquiry and at the time of the challenged conduct is always a matter of law for the court, hence is always capable of decision at the summary judgment stage. Whether the conduct allegedly violative of the right actually occurred or, if so, whether a reasonable officer would have known that that conduct would violate the right, however, may or may not be then subject to determination as a matter of law. If there are genuine issues of historical fact respecting the officer's conduct or its reasonableness

9

> under the circumstances, summary judgment is not appropriate, and
> the issue must be reserved for trial.

*Pritchett v. Alford*, 973 F.2d 307, 312-13 (4th Cir. 1992) (internal citations omitted).

The Fourth Circuit has also explained, in the context of a qualified immunity defense to excessive force allegations, that "the objective reasonableness of force [should be viewed] in full context, with an eye toward the proportionality of the force in light of all the circumstances." *Rowland*, 41 F.3d at 173–174 (summing up the facts in that case to state that "it is impossible to escape the conclusion that a man suffered a serious leg injury over a lost five dollar bill," where an officer pursued and tackled a man who had picked up and failed to return a five dollar bill dropped by a woman at a bus station, after the officer ordered him to return the money). Rather than examining a single aspect of an incident in isolation, courts are to evaluate the objective reasonableness based on the totality of circumstances. *Id.* Factors to consider in excessive force cases include "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The Court must first define the rights allegedly infringed by the officers. The Plaintiff alleges that "Defendants' actions in unlawfully restraining, assaulting and battering, and criminally charging Hunter Parrish constitute violations of clearly established constitutional and statutory rights of which trained and licensed law enforcement officers should be fully aware." (Resp. at 13.) The Defendants counter that Detective Epling used reasonable force in self-defense when Parrish "shoved [him] back a little" after Detective Epling first made physical contact with Parrish. (Reply at 6.) The Fourth Amendment of the United States Constitution protects citizens from unlawful search and seizure. This protection applies to unlawful arrests and allegations of

10

excessive force.   At issue here is the objective reasonableness of Detective Epling[11] in (as events are recounted by the Plaintiff) (a) ordering Parrish and King to leave the area, (b) slinging Parrish against a garage door and pinning him to the ground, and (c) pursuing criminal charges against him.   The force used must be viewed in the context of the entire incident.   As an initial matter, any reasonable officer should be aware that he lacks the authority to lawfully issue orders, and implement them with force, in private civil matters, absent reasonable suspicion of criminal activity or a need to maintain public order.   *See, e.g.*, *Terry v. Ohio*, 392 U.S. 1, 22 (1968) (explaining that "a police officer may in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest.").

First, a question of fact exists as to whether Detective Epling identified himself as a police officer.   Detective Epling and Sergeant Dunn arrived in an unmarked car and were in plainclothes.   A factual dispute exists as to whether Detective Epling's badge was visible, and the Court must draw inferences in favor of the Plaintiff, as the non-moving party, and leave the credibility and factual determinations for a jury.   If the officers did not identify themselves, any actions taken based on the Plaintiff's failure to obey orders, alleged obstruction, or alleged assault on an officer (to the extent standards differ from assault on a private citizen) were unreasonable. In this case, however, the Plaintiff has produced sufficient evidence to permit a jury to find excessive force even if it finds that the officers did identify themselves.

The officers were entitled to use their authority only to the extent necessary to keep the peace and prevent a potential disturbance.   Detective Epling was aware that McCallister wished to

---

11  The Court will consider the facts as applied to Sergeant Dunn in Part B, *infra*, to evaluate bystander liability.   To the extent Detective Dunn was involved in the pursuit of criminal charges against Parrish, this section is applicable to him as well.

leave with her boyfriend, who was expected to arrive to pick her up.   He ordered Parrish and King to leave the area "until this is resolved with Workforce and/or [McCallister's] mother."   (G. Epling Depo., 65–66.)   That order was clearly related to the civil matter of whether McCallister could leave with her boyfriend, and appears specifically targeted to Matt Epling's concerns regarding the Workforce agreement.   As such, Detective Epling could not lawfully stop or arrest Parrish based on his refusal to obey.[12]   Officers can reasonably issue orders designed to prevent a disturbance prior to the commission of a crime.   However, a reasonable officer in possession of the knowledge that a young man was expected to arrive to pick his girlfriend up from work would not assume that the boyfriend's arrival and statement that he was there "to pick up my girlfriend" required interference to keep the peace.   (G. Epling Depo., 64.)   The facts, presented by the Plaintiff, indicate that Detective Epling did not stay removed from this civil matter and interfere only if and when necessary to prevent a disturbance.

Viewing the facts in the light most favorable to the Plaintiff, the encounter between Detective Epling and Parrish began with Detective Epling's effort to enforce his brother's interpretation of the Workforce rules.   The physical altercation cannot be viewed in isolation from the initiating events.   Detective Epling either touched or grabbed Parrish's arm after Parrish ignored his orders to leave the area.   Parrish then pulled or shoved away from Detective Epling.[13] Detective Epling responded by spinning him around and throwing him against the garage door. Parrish was slammed against a window in the garage door covered by a tin sign, briefly lost consciousness, then fell to the ground, where Detective Epling pinned him down, intending to

---

12  The Plaintiff cites long-standing West Virginia authority for the related proposition that people may resist unlawful arrest.   *See, e.g.*, *State v. Gum*, 69 S.E. 463, 465 (W. Va. 1910).

13  Accounts of the physical altercation vary only slightly: in Detective Epling's version, Detective Epling tapped Parrish's arm, and Parrish responded by grabbing his wrist and shoving him away.   (G. Eping Depo., 96–98.)

handcuff and arrest him.   Parrish suffered a severe cut on his hand, requiring surgical reattachment of the sagittal band.[14]   As mandated by *Rowland*, the force used should be considered in relation to the seriousness of the crime and the risk Parrish posed to officers and others.

As discussed, Parrish had committed no crime when the physical altercation began. Though the Defendants argue in their reply that Detective Epling was merely defending himself after Parrish shoved him, Detective Epling states in both his deposition and his incident report that Parrish was attempting to break his grip and get away from him just prior to Detective Epling slinging him against the garage door.   (G. Epling Depo., 97; Pl.'s Ex. 19, p. 3 of 8.)   Detective Epling also referred to Parrish as "a little guy."   (G. Epling Depo., 61.)   Detective Epling was responding to a vague personal call from his brother, in which the only basis for concern about a possible disturbance was apparently that a teenager was expected to arrive to pick up his girlfriend. Viewing the facts and inferences in favor of the Plaintiff, but from the perspective of the officer, there was little reason to fear a breach of the peace, threat or a disturbance.   In light of the absence of criminal conduct on the part of Parrish prior to the physical confrontation that undisputedly[15] began with Detective Epling touching or grabbing Parrish's arm, slinging Parrish into a garage door with a level of force sufficient to break a glass window and render Parrish briefly unconscious could easily be found to be excessive by a jury.   The Plaintiff has met his burden of producing

---

14  The Defendants contend that Parrish punched a tin sign shortly after the altercation with Detective Epling and may have cut his hand then.   However, sufficient evidence has been produced to allow a reasonable jury to find that he sustained the cut when Detective Epling threw him against the garage door.

15  A former employee of Auto Detailing by Me stated that Parrish was the first to make physical contact, but he also stated he was in another area of the garage at the time, and regardless, Detective Epling's own account states that he tapped Parrish's arm first.

facts and evidence sufficient to allow a reasonable juror to find that Detective Epling used excessive force and assaulted and battered him.

The subsequent criminal charges against Parrish, viewing the facts in the light most favorable to the Plaintiff, also appear to be based on sufficiently questionable grounds to defeat qualified immunity at the summary judgment stage.   The charges arise out of Parrish's refusal to obey Detective Epling's orders and the physical altercation.   The Plaintiff has produced evidence sufficient for a jury to find that (a) the orders were unlawful, (b) Detective Epling did not identify himself as an officer, and (c) Parrish exerted no objectionable or threatening force toward Detective Epling.   Though a magistrate judge found probable cause to issue an arrest warrant, that finding was based on Detective Epling's account of the incident, which the Plaintiff has produced evidence to suggest may include some inaccuracies.   A reasonable jury could find that Detective Epling and Sergeant Dunn[16] knew or should have known that there was no probable cause to support an arrest.

### B.  Bystander Liability

Sergeant Dunn accompanied Detective Epling to Auto Detailing by Me, but was directly involved only at the end of the physical altercation.   However, officers have a duty to intervene in some circumstances when fellow officers infringe on the rights of members of the public.   The Plaintiff asserts that Sergeant Dunn is liable for the 42 U.S.C. § 1983 allegations under a theory of bystander liability.   "The concept of bystander liability is premised on a law officer's duty to uphold the law and protect the public from illegal acts, regardless of who commits them." *Randall v. Prince George's Cnty., Md.*, 302 F.3d 188, 203 (4th Cir. 2002).   Bystander liability

---

16 Sergeant Dunn's involvement in the pursuit of the criminal charges is unclear, in part because his incident report is unavailable.   Given the evidence produced, and, importantly, not produced, it is for the jury to determine whether he is directly liable, subject to bystander liability, or not liable at all.

applies when an officer:   "(1) is confronted with a fellow officer's illegal act, (2) possesses the power to prevent it, and (3) chooses not to act."   *Id.*

It is uncontested that Sergeant Dunn accompanied Detective Epling to his brother's business following a personal call requesting assistance with a civil matter and/or to prevent a potential disturbance.   As detailed above, the Plaintiff has produced sufficient evidence to permit a jury to conclude that Detective Epling improperly interfered in the civil employment-related dispute to assist his brother in preventing Ms. McCallister from leaving with her boyfriend. Detective Epling's involvement then led to a physical altercation with Parrish during which Detective Epling allegedly used excessive force.   The Plaintiff asserts that neither man identified himself as a police officer.   Factual disputes exist as to precisely where Sergeant Dunn was during the relatively brief time in question.   The Plaintiff has produced evidence suggesting that he was in the same general area as Detective Epling.   Sergeant Dunn intervened only after Kyle King joined the fray, and after Parrish had been injured.   Sergeant Dunn's intervention can be interpreted as either an attempt to assist Detective Epling or an attempt to halt Detective Epling's violations of Parrish's (and King's and McCallister's) constitutional rights.

Sergeant Dunn is charged with the same standards of reasonableness and knowledge as Detective Epling.   Contrary to the contention of the Defendant, Sergeant Dunn's subjective belief that Detective Epling was not violating Parrish's constitutional rights does not defeat liability. (*See* Reply at 8.)   Viewing the evidence in the light most favorable to the Plaintiff, a reasonable jury could find that Sergeant Dunn heard and saw Detective Epling's alleged illegal acts and chose not to intervene as soon as he reasonably could have.[17]   His interference would have been

---

17 Of course, a jury could also find that Parrish posed a threat and assaulted Detective Epling, and Detective Epling responded reasonably, or that Sergeant Dunn intervened at the earliest possible time.   For the purposes of summary

sufficient to prevent those illegal acts, as evidenced by the fact that he ultimately did stop the physical altercation.  A jury could also find that the criminal charges against Parrish were not supported by probable cause, thereby continuing the violation of his rights until the resolution of those charges.  For the reasons discussed in Section A, qualified immunity is unavailable to Sergeant Dunn at the summary judgment stage, because evidence exists from which a jury could conclude that Detective Epling's conduct was unreasonable and unlawful and that Sgt. Dunn should have been aware of the same.  Accordingly, summary judgment is not warranted as to Sergeant Dunn for the 42 U.S.C. § 1983 claims.

### C.  Immunity from State Law Claims

The Defendants next contend that they are entitled to immunity from state law claims pursuant to W.Va. Code § 29-12A-5(b), which provides:

> (b) An employee of a political subdivision is immune from liability unless one of the following applies:
>
> (1) His or her acts or omissions were manifestly outside the scope of employment or official responsibilities;
>
> (2) His or her acts or omissions were with malicious purpose, in bad faith, or in a wanton or reckless manner; or
>
> (3) Liability is expressly imposed upon the employee by a provision of this code.

Like federal qualified immunity, "[i]mmunities under West Virginia law are more than a defense to a suit in that they grant governmental bodies and public officials the right not to be subject to the burden of trial at all."  *Hutchison v. City of Huntington*, 479 S.E.2d 649, 658 (W. Va. 1996).   The Plaintiff contends that the Defendants acted outside the scope of their employment by "interfering

---

judgment, however, the Court focuses on the reasonable inferences from the evidence drawn in favor of the non-moving party.

in a private employment matter" and by assaulting and battering Parrish when he challenged their abuse of power.   (Resp. at 19.)   The Defendants' reply, which seems targeted at arguments not presented by the Plaintiff, states that they had every right to be at the scene and had no obligation to be in uniform.   (Reply at 9.)

A jury could consider the officers' presence at the scene somewhat misplaced under the circumstances.   The officers did not report to dispatch that they were responding to a call and they responded to a personal call from Detective Epling's brother.[18]   It is not clear that Detective Epling fully explained the circumstances to Sergeant Dunn prior to the incident, as would be expected in a standard response to a call for police assistance, and to the extent they intended to respond for the purpose of assisting Matt Epling in his civil employment dispute, their presence was improper.   Assuming the officers were properly present at the scene, any use of their status as police officers to interfere in the civil matter, presented by Ricki McCallister's desire to leave her place of employment with her boyfriend, was beyond the scope of their employment.   There is evidence from which a reasonable jury could conclude that Detective Epling and Sergeant Dunn acted outside the scope of their employment when they (a) assisted Matt Epling in preventing Ricki McCallister from leaving Auto Detailing by Me,[19] (b) ordered Parrish to leave, (c) assaulted and battered Parrish and (d) pinned Parrish to the ground.

---

18 The Defense cites an expert report stating that no policy disfavors officers responding to call from friends or family members.   For the purposes of immunity analysis, no clear rule bars such responses, but this case exemplifies the risks of permitting officers to respond to disputes involving family members.   Officers are required to reasonably and professionally evaluate events, and their ability to do so may be compromised when a family member offers a version of events in conflict with the evidence, or, as in this case, is concerned about civil liability.   An officer's unreasonable conduct is not made reasonable simply because most people would naturally trust and want to help their siblings.
19 Though McCallister's claims are no longer part of this suit, the officers' interactions with her provide necessary context to the analysis of the officers' actions.

Viewing the facts and inferences in the light most favorable to the Plaintiff, a reasonable jury could also infer that Detective Epling's actions, and Sergeant Dunn's actions and omissions,[20] were "with malicious purpose, in bad faith, or in a wanton or reckless manner."   W.Va. Code § 29-12A-5(b)(2).   Detective Epling stated repeatedly during his deposition that people must obey him, regardless of the legal grounding of his orders.   (*See, e.g.*, G. Epling Depo., 79–84.)   Parrish and his friends, meanwhile, ignored Detective Epling's orders, challenging his "ill-founded interpretation of his police powers," as the Plaintiff puts it.   (Resp. at 6.)   A jury could reasonably infer that Detective Epling was motivated, at least in part, by a desire to enforce compliance with his orders, regardless of their legal grounding, or to punish Parrish for disobeying him, either of which could constitute malicious purpose or bad faith.   Accordingly, the Court finds that the Defendants have not demonstrated that they are entitled to state immunity as a matter of law.

### D.  Assault and Battery

Sergeant Dunn moves for summary judgment as to Count II, which alleges assault and battery.   The Plaintiff states that he does not oppose summary judgment for Sergeant Dunn, based on the discovery indicating that only Detective Epling used force against Parrish.   Detective Epling does not appear to contest the sufficiency of evidence against him as to the assault and battery claim, beyond his proffered defense of immunity and his assertion that he used reasonable force.   Those arguments have been discussed above.   Thus, the Plaintiff can go forward as to Count II for assault and battery against Detective Epling, but summary judgment is granted in favor of Sergeant Dunn as to Count II.

---

20  Though the Court finds that there is evidence which could indicate that both officers may have acted outside the scope of their employment and/or with bad faith, and are therefore not entitled to state law immunity, the Plaintiff has not presented sufficient evidence against Sergeant Dunn for any state law claim.

### E.  False Imprisonment

Both Detective Epling and Sergeant Dunn move for summary judgment as to Count III, which alleges false imprisonment.  Detective Epling asserts that "[a]ll evidence in this case suggests the exact opposite of an illegal detention.  The Plaintiff was told many times to leave the area before the incident occurred."  (G. Epling Mem. at 9.)  Detective Epling further claims that he "never held the Plaintiff against his will," and never "confined the Plaintiff to any area."  (*Id.*)  Sergeant Dunn states that he "did not have any interaction with Hunter Parrish except to call the ambulance for him after he cut his hand."  (J. Dunn Mem. at 8.)  The Plaintiff responds that "Det. Epling physically restrained Hunter Parrish when he threw him into the door and then to the ground," which, he alleges, "constituted an illegal detention of a person without lawful process." (Resp. at 27.)  As to Sergeant Dunn, the Plaintiff appears to rely on a theory of bystander liability, stating that he "was present and stood idly by and did nothing."  (*Id.*)

In West Virginia, "any exercise of force, or express or implied threat of force, by which in fact any person is deprived of his liberty, compelled to remain where he does not wish to remain, or to go where he does not wish to go, is an imprisonment."  *Belcher v. Wal-Mart Stores, Inc.*, 568 S.E.2d 19, 30 (W.Va. 2002) (quoting *Johnson v. Norfolk & W. Ry. Co.,* 97 S.E. 189, 191 (W.Va. 1918)).  Contrary to Detective Epling's assertion, the Plaintiff has alleged, and produced evidence sufficient to support a jury finding, that Detective Epling grabbed him, threw him against a garage door, then pinned him to the ground.  Though brief, according to the Plaintiff's evidence, Parrish was compelled by Detective Epling's exercise of force to remain pinned in place, undoubtedly against his will.  The fact that Detective Epling previously told Parrish to leave does not negate his later action of restraining Parrish after he did not obey that order.  Based on the facts and

evidence produced, a reasonable jury could find in the Plaintiff's favor as to Count III against Detective Epling.   Thus, summary judgment is not appropriate.

However, no evidence has been presented to suggest that Sergeant Dunn in any way constrained Hunter Parrish's movements.   To the contrary, the facts suggest that Sergeant Dunn's intervention broke up the physical altercation, making it possible for Parrish to leave.   Bystander liability is applicable only to claims under 42 U.S.C. § 1983.   False imprisonment is a state law tort cause of action.   The Plaintiff agreed to dismiss the assault and battery claim against Sergeant Dunn based on his lack of direct involvement.   Similarly, the evidence does not support a false imprisonment claim against Sergeant Dunn.   The Plaintiff has not produced evidence sufficient to allow a jury to find that Sergeant Dunn used force or threat of force to falsely imprison Parrish. The Court, therefore, finds that Sergeant Dunn is entitled to summary judgment as to Count III.

### F.  Tort of Outrage

The Plaintiff asserts a cause of action for Outrageous Conduct in Count IV of his Amended Complaint.   Both officers move for summary judgment, arguing that the record is devoid of evidence supporting the tort of outrage.   The Plaintiff responds by summing up his interpretation of events as follows: "Defendants … us[ed] their badges to do personal favors for family, assault[ed] teenagers, st[ood] idly by and allow[ed] the assault to continue, and then subject[ed] them to criminal prosecution."  (Resp. at 29.)   In the course of "act[ing] as his brother's own private security force…[Detective Epling] assaulted and battered Hunter Parrish and then pursued criminal charges against him."  (*Id.* at 27.)   The Defendants reply that "[t]he record is devoid of any evidence that Sgt. Dunn and Epling were private security for the Auto Detailing By Me business," and that the Plaintiff's cut hand does not establish unreasonable force.   (Reply at 10.)

In reply to a reference in the Plaintiff's response regarding Sergeant Dunn's missing narrative, the Defendants state that "there is no evidence that the officer doctored the police reports" based on the fact that Plaintiff's counsel represented Parrish in his criminal case involving the same police reports, and "Parrish was never found innocent of the charges."   (*Id.*)

In West Virginia, the tort of outrage, now perhaps more commonly known as intentional infliction of emotional distress, follows the Restatement of Torts (Second):   "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm."   Syl. pt. 6, *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692, 694 (W. Va. 1982).   The West Virginia Supreme Court has established the following elements:

> (1) that the defendant's conduct was atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency; (2) that the defendant acted with the intent to inflict emotional distress, or acted recklessly when it was certain or substantially certain emotional distress would result from his conduct; (3) that the actions of the defendant caused the plaintiff to suffer emotional distress; and, (4) that the emotional distress suffered by the plaintiff was so severe that no reasonable person could be expected to endure it.

Syl. pt. 3, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419, 421 (W. Va. 1998) (reaffirmed in *Hatfield v. Health Mgmt. Associates of W. Virginia*, 672 S.E.2d 395, 404 (W. Va. 2008).   The court further explained that "whether conduct may reasonably be considered outrageous is a legal question, and whether conduct is in fact outrageous is a question for jury determination."   Syl. pt. 4, *id.*

Courts have struggled to answer the legal question of whether conduct may reasonably be considered outrageous.   *Courtney v. Courtney*, 413 S.E.2d 418, 422 (W. Va. 1991) (reviewing several cases considering the question).   Plaintiffs must make a showing that "the defendant's actions toward the plaintiff were atrocious, intolerable, and so extreme and outrageous as to

exceed the bounds of decency" and be viewed as intolerable in a civilized society.  *Travis*, 504 S.E.2d at 425.  "[C]onduct that is merely annoying, harmful of one's rights or expectations, uncivil, mean-spirited, or negligent does not constitute outrageous conduct.  On the other hand, outrageous conduct can include physical violence that causes bodily harm and emotional distress." *Courtney*, 413 S.E.2d at 423–424 (internal citations removed).  In addition, both a defendant's intent and any power differential between the plaintiff and defendant can lead both a court and a fact-finder to view conduct as more extreme or outrageous.  *See Hutchinson v. W. Virginia State Police*, 731 F. Supp. 2d 521, 549-50 (S.D.W. Va. 2010) *aff'd sub nom. Hutchinson v. Lemmon*, 436 F. App'x 210 (4th Cir. 2011) (citing *Travis*, 504 S.E.2d at 426).

The conduct alleged by the Plaintiff, given the power differential between adult officers and the teenaged Parrish, may very well suffice to allow the Plaintiff to survive summary judgment as to the first two elements of the outrage cause of action.   However, the Plaintiff has produced no evidence that the officers' actions caused him to suffer emotional distress or that such distress reached the legally required level of severity.   A non-moving party is required to "come forward with more than mere speculation or the building of one inference upon another" to avoid summary judgment.  *Perry v. Kappos*, No.11-1476, 2012 WL 2130908, at *3 (4th Cir. June 13, 2012) (unpublished decision) (quoting *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985)).   While some emotional distress may be inferred from the facts of the case and the physical injury, no reasonable jury could find, based on the evidence presented, that Parrish suffered emotional distress so severe no reasonable person could be expected to endure it.   The Plaintiff has failed to produce evidence as to an element of the tort of outrage, and so summary judgment must be granted for the Defendants.

### *CONCLUSION*

Wherefore, after careful consideration and based on the findings contained herein, the Court does hereby **ORDER** that *Defendant Det. Gary Epling's Motion for Summary Judgment* (Document 123) be **GRANTED** as to Count IV – Outrageous Conduct, and **DENIED** as to all remaining counts, and that *Defendant Sgt. John Dunn's Motion for Summary Judgment* (Document 122) be **GRANTED** as to Count II – Assault and Battery, Count III – False Imprisonment, and Count IV – Outrageous Conduct, and **DENIED** as to all remaining counts.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:        March 20, 2014

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA